## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL HAINES, | |
| Plaintiff, | CIVIL ACTION NO. 1:21-CV-01601 |
| v. | (SAPORITO, J.) |
| PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, a Commonwealth of Pennsylvania agency, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

This civil action commenced on September 23, 2021, when the plaintiff, Paul Haines, appearing through counsel, filed his original complaint in this matter against his former employer, the Pennsylvania Department of Transportation ("PennDOT").

In his original complaint, Haines named three defendants: (1) his former employer, PennDOT; (2) Ronald Gorko, a PennDOT foreman and Haines's immediate supervisor; and (3) Brian Small, a PennDOT senior highway maintenance manager and indirect supervisor to Haines.[1] In his

---

[1] Gorko's direct supervisor was non-party Steven Roberts, an assistant county manager who reported directly to Small.

original complaint, Haines claimed that his former employer discriminated against him on the basis of his sexual orientation and retaliated against him for protected activities, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act (the "PHRA"), 43 P.S. § 951 *et seq.* Haines also claimed that Gorko and Small should be held personally liable under the PHRA for aiding and abetting PennDOT in this discriminatory and retaliatory conduct, pursuant to 43 P.S. § 955(e). Haines further claimed that he had been subjected to ongoing harassment and a hostile work environment, culminating in his constructive discharge, in violation of Title VII and the PHRA. Finally, Haines claimed that these alleged discriminatory and retaliatory practices had deprived him of his Fourteenth Amendment equal protection rights, made actionable under 42 U.S.C. § 1983. Doc. 1.

On January 6, 2022, the plaintiff filed his first amended complaint. The roster of named defendants remained the same in this first amended complaint, but the plaintiff omitted all state-law PHRA claims, asserting only federal Title VII claims in this amended pleading. Doc. 14.

On January 19, 2022, the plaintiff filed his second amended

complaint. The second amended complaint included some additional factual allegations, but it asserted the same federal Title VII claims against the same roster of named defendants. Doc. 16.

PennDOT, Small, and Gorko answered the second amended complaint, and they now move for summary judgment.

On May 10, 2023, PennDOT and Small, jointly represented, filed a motion for summary judgment, a brief in support, and their Local Rule 56.1 statement of material facts with supporting exhibits. Doc. 48; Doc. 49; Doc. 50. On May 30, 2023, the plaintiff filed his brief in opposition and his response to the moving defendants' statement of material facts with counterstatement of material facts and supporting exhibits. Doc. 52; Doc. 54; Doc. 55.

On May 12, 2023, Gorko filed a short motion to join PennDOT's motion for summary judgment, but neither a brief in support nor a statement of material facts. Doc. 51. On May 30, 2023, the plaintiff filed a brief in opposition to the motion for joinder, arguing that Gorko's motion should be denied as procedurally defective. Doc. 53. On June 20, 2023, Gorko filed a paper captioned as a "supplemental brief" in support of his motion for joinder, but which was docketed by Gorko's counsel as a motion

for summary judgment. Doc. 56. Gorko did not file a separate statement of material facts, supported by citations to the record, as required under the federal and local civil rules.[2] *See* Fed. R. Civ. P. 56(c)(1); M.D. Pa. 56.1. On June 26, 2023, the plaintiff filed a brief in opposition, together with a counterstatement of material facts. Doc. 57; Doc. 58.

All three motions—PennDOT's motion for summary judgment, Gorko's motion to join PennDOT's motion, and Gorko's motion for summary judgment—are fully briefed and ripe for decision.

## I.  LEGAL STANDARDS

### A. *Sua Sponte* Rule 12(b)(6) Dismissal

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may dismiss claims under Rule 12(b)(6) *sua sponte* under two circumstances: (1) where the plaintiff has been "provided notice and an opportunity to respond"; or (2) "where it is clear that the plaintiff cannot prevail and that any amendment would be futile." *Bethea v. Nation of Islam*, 248 Fed.

---

[2] Gorko's supplemental brief includes a short section that may be intended to be such a statement of material facts, set forth in numbered paragraphs, but it does not include any record citations at all.

App'x 331, 333 (3d Cir. 2007) (per curiam).

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir.

2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

### B. Rule 56 Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II. DISCUSSION

In his five-count second amended complaint, the plaintiff has asserted the following employment-related claims: (1) the defendants discriminated against Haines on the basis of his sexual orientation and retaliated against him for protected activities, in violation of Title VII, as set forth in the First, Second, and Fourth Counts of the second amended complaint; and (2) Haines was subjected to ongoing harassment and a hostile work environment, culminating in his constructive discharge, in violation of Title VII, and PennDOT was vicariously liable for such harassment because one of his alleged harassers was his immediate supervisor, Gorko, as set forth in the Third and Fifth Counts of the second amended complaint.

## A. Personal-Capacity Claims Against Individual Defendants

The Third and Fourth Counts of the second amended complaint assert Title VII hostile work environment and retaliation claims against the individual defendants, Small and Gorko, in their personal capacities.[3]

But it is well established that individual employees may not be held liable in their personal capacities under Title VII. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996) (en banc). In his original complaint, the plaintiff asserted state-law PHRA claims as well, against *all* defendants. *See, e.g.*, Compl. ¶¶ 61–63 (expressly asserting a PHRA aiding-and-abetting claim against Small and Gorko), Doc. 1. *See generally Dici v. Pennsylvania*, 91 F.3d 542, 552–53 (3d Cir. 1996) (recognizing that, unlike Title VII, the PHRA allows for individual liability with respect to aiding-and-abetting claims against supervisory employees) (citing 43 P.S. § 955(e)). But those claims have been omitted from his amended pleadings, presumably because, as a

---

[3] Based on its label in the second amended complaint, the plaintiff's Fifth Count, for "vicarious liability," is putatively brought against these individual defendants as well, but based on the substance of the second amended complaint's perfunctory recitation of this claim, *see* Second Am. Compl. ¶ 74, Doc. 16, this vicarious liability claim appears to be directed solely at the plaintiff's former employer, PennDOT. Thus, we have disregarded the pleading's unsupported "all defendants" designation.

state agency, PennDOT is immune from PHRA claims asserted in federal court, *see Moore v. Pa. Dep't of Mil. & Veterans Affs.*, 216 F. Supp. 2d 446, 454 (E.D. Pa. 2002), and a § 955(e) aiding-and-abetting claim against an individual supervisory defendant is not cognizable in the absence of a predicate PHRA violation by the employer, *see Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 357 n.5 (E.D. Pa. 2013). The plaintiff's second amended complaint asserts personal-capacity claims against Small and Gorko under Title VII only. Thus, we find that the plaintiff's Title VII hostile work environment and retaliation claims against the individual defendants in their personal capacities are patently meritless, that it is clear that the plaintiff cannot prevail against them on these claims, and that any amendment would be futile.

Accordingly, the plaintiff's claims against the individual defendants, Small and Gorko, in their personal capacities, will be dismissed *sua sponte* for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and this dismissal will be without leave to amend as any such amendment would be futile. As a consequence, we will also deny Gorko's motions for joinder and for summary judgment as moot, and we will deny

PennDOT's motion for summary judgment as moot to the extent it seeks summary judgment on behalf of Small in his personal capacity.

### B. Title VII Claims Against Employer

The First, Second, and Fourth Counts of the second amended complaint assert Title VII discrimination and retaliation claims against PennDOT arising out of discrete acts of discrimination or retaliation experienced by Haines. The Third and Fifth Counts of the second amended complaint assert Title VII hostile work environment claims against PennDOT arising out of a pattern of harassment of Haines on the basis of his sexual orientation by his immediate supervisor, Gorko, and other coworkers, culminating in Haines's constructive discharge.

PennDOT has moved for summary judgment on the grounds that Haines failed to properly exhaust administrative remedies with respect to certain claims and failed to establish a prima facie case with respect to the remainder of his discrimination, retaliation, and hostile work environment claims.

We analyze the plaintiff's discrimination and retaliation claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tucker v. Thomas Jefferson*

*Univ.*, 484 Fed. App'x 710, 712 (3d Cir. 2012) (discrimination); *Moore v.*

*City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (retaliation). As

summarized by the Supreme Court of the United States:

> Under *McDonnell Douglas*, a plaintiff must first
> establish a prima face case of discrimination. The
> burden then shifts to the employer to articulate a
> legitimate, nondiscriminatory reason for its
> employment action. If the employer meets this burden,
> the presumption of intentional discrimination
> disappears, but the plaintiff can still prove disparate
> treatment by, for instance, offering evidence
> demonstrating that the employer's explanation is
> pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (citations omitted).

### 1. *Material Facts*[4]

Paul Haines was hired by PennDOT in late December 2015 or early

---

[4] In compliance with Local Rule 56.1, PennDOT's motion for
summary judgment is "accompanied by a separate, short and concise
statement of the material facts, in numbered paragraphs, as to which the
moving party contends there is no genuine issue to be tried." Doc. 50. *See
generally* M.D. Pa. L.R. 56.1. Moreover, each factual statement presented
by PennDOT in support of its motion for summary judgment "include[s]
references to the parts of the record that support the statements." *Id.*; *see
also* Fed. R. Civ. P. 56(c)(1).

A party opposing summary judgment is likewise required by the
local rules to file "a separate, short and concise statement of the material
facts, responding to the numbered paragraphs" in the movant's
statement of material facts, which must similarly "include references to
the parts of the record that support the statements." M.D. Pa. L.R. 56.1.

*(continued on next page)*

January 2016 to work as a temporary Transportation Equipment Operator A ("TEO A"). Haines was rehired for the two subsequent winter seasons, 2016/2017 and 2017/2018, in the same temporary capacity. Following the 2017/2018 winter season, Haines was hired as a permanent TEO A. In August 2020, Haines was promoted to Transportation Equipment Operator B ("TEO B"). At times, Haines also served as an acting foreman, a voluntary position that often served as an opportunity

---

Here, the non-moving plaintiff has filed the requisite responsive statement of material facts, responding to the numbered paragraphs of the moving defendant's statement of material facts. Doc. 54, at 1–6. But in addition to his responsive statement of material facts, the plaintiff has also included a separate "counterstatement of material facts" that does not respond to PennDOT's statement of material facts. *Id.* at 6–13. The local rules do not permit a non-moving party to file an *additional* statement of material facts that does not respond to the movant's statement. *See Farmer v. Decker*, 353 F. Supp. 3d 342, 347 n.1 (M.D. Pa. 2018) (disregarding non-movant's additional statement of facts for non-compliance with Local Rule 56.1); *Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (declining to consider separate counter-statement of facts that was non-responsive to the movant's statement because it was "neither contemplated nor permitted by the Local Rules"); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 Fed. App'x 84, 87 (3d Cir. 2019) (upholding district court decision to strike non-movant's non-responsive counter-statement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 64, 613–14 (3d Cir. 2018) (upholding district court decision to strike non-responsive paragraphs from non-movant's answer to movant's statement of material facts under Local Rule 56.1). Thus, we have simply disregarded the plaintiff's non-responsive additional "counterstatement of material facts."

for a TEO B to show management how he would handle being a foreman.

TEOs generally operate commercial trucks and loaders, and they handle a variety of motorized and non-motorized tools for highway and bridge maintenance. TEOs are union positions covered by a collective bargaining agreement between AFSCME and PennDOT. Under that collective bargaining agreement, every six months, TEOs would "bid" for worksite locations ("stockpiles") and work shifts, with selections based on seniority. On multiple occasions, Haines selected the Center Moreland stockpile in Wyoming County, Pennsylvania, whose foreman/supervisor was Ronald Gorko.

On February 3, 2019, Haines reported to Steven Roberts, the assistant county manager, that he had been texted a "meme" from a coworker in which Haines's face had been superimposed on an image implying that Haines was unqualified to interview for an open foreman position. Haines reported that a menstrual pad had been left on a seat where he normally sat. Roberts reported Haines's complaint to his supervisor, Brian Small, the county manager, who in turn arranged a meeting between Haines, Roberts, Small, and a human resources ("HR") representative, Carl Kmiec. During the meeting, Haines did not identify

who had sent the meme or who had placed the menstrual pad on the seat where Haines normally sat. On February 4, 2019, Small sent out an email to all Wyoming County foremen advising that inappropriate workplace behavior would not be tolerated.

In August 2019, while Haines was on a light duty restriction due to a work-related injury, he worked in Roberts's office. In conversations with Roberts during that period of approximately one month, Haines told Roberts that Gorko would constantly call Haines "a little bitch" and say he was "acting like a girl" about being injured. Roberts testified at deposition that he found nothing actionable in these conversations that he could take to HR.

On September 14, 2020, Haines was assigned to work with fellow TEOs Chris Ritz and Gary Porasky to perform "cold patching" on the highway. On September 15, 2020, Porasky reported that Haines, who was the driver of their PennDOT truck the previous day, had driven erratically and performed "burnouts" that resulted in damage to the truck.[5] Porasky indicated that he did not want to ride in the truck with

---

[5] The plaintiff has admitted this factual statement in part and disputed it in part, but without articulating which portion is admitted
*(continued on next page)*

Haines anymore.[6] Witness statements were collected from Porasky, Ritz, and Haines, and Roberts investigated the scene where the incident occurred and drafted a full report.[7] On September 16, 2020, Haines, Porasky, and Ritz were all provided with Pre-Disciplinary Conference ("PDC") notices in accordance with PennDOT safety and disciplinary procedures.

The next day, September 17, 2020, Haines asked to leave work early. His foreman, Gorko, called the assistant county manager, Roberts, to ask for approval. On the call, Haines indicated that he intended to see his lawyer. Roberts approved Haines's request for leave.[8]

---

and which portion is disputed, and without citation to any evidence whatsoever in support of the disputed portion, whatever it may be. Thus, the defendant's factual statement has been deemed admitted in full.

[6] *See supra* note 5.

[7] *See supra* note 5.

[8] The plaintiff has responded to the defendant's fact statement "denied as stated." In his response, the plaintiff has admitted that he requested to leave work early on September 17, 2020, that Gorko called Roberts for approval, and that Roberts approved the request to leave work early. The plaintiff contends, however, that Haines did not discuss contacting his lawyer at that time. *See* Pl. Resp. to Statement of Facts ¶ 23 ("There was nothing further discussed on that call."), Doc. 54. In support, the plaintiff has cited Roberts's deposition testimony. But in his testimony, Roberts specifically stated: "Paul [Haines] then said he wanted to go see his lawyer. . . . I told [Gorko and Haines] that if he wanted to leave, just let him go." Roberts Dep. 67 ll.9–12, Doc. 52-4. The

*(continued on next page)*

Gorko then called the county manager, Small, to report that Haines was "very upset" about the PDC notice. Gorko advised Small that Haines had been seeing a psychiatrist, was mentally unstable, and had no problem hurting someone.[9] Small instructed Gorko to draft an email summary of his concerns. Then Small contacted HR personnel, Kmiec and Jenna Davis, and the three of them together contacted Susan Moravetz and another staffer at the State Employee Assistance Program ("SEAP").[10] Based on the available information and SEAP's recommendation, Small, Kmiec, and Davis contacted local police to perform a welfare check on Haines.[11] Based on their reports to the 9-1-1 dispatcher that Haines had "made threats that he was going to beat his family" and that he might "possibly" be violent if police showed up, the local police officer who was dispatched for a welfare check or domestic

plaintiff has cited no other evidence to dispute the defendant's factual statement on this point. Thus, it has been deemed admitted.

[9] In his response to the defendant's statements of facts, the plaintiff has expressly admitted this fact as stated by the defendant. His admission, however, is followed by an extensive statement in which he purports to dispute facts neither stated nor implied by the defendant's factual statement. This additional commentary is nonresponsive and argumentative, and thus we have disregarded it.

[10] *See supra* note 9.

[11] Small initiated the call to 9-1-1, but then patched in Kmiec and Davis by conference call.

dispute considered it serious enough to call for backup when deploying.[12] Upon arriving at the Haines home, however, he found nothing unusual. The backup request to a neighboring municipal police force was cancelled before units arrived. The responding officer's supervisor, the township police chief, joined him in any event. The responding officer called Small that afternoon to report that he and the township police chief conducted a welfare check at the Haines residence, spoke to everyone there, and found no problems or concerns.

Later that same day, Haines sent an email referencing a "long list" of events that had made him feel uncomfortable.[13] On September 23, 2020, Haines sent a longer email to HR that included the full list of alleged incidents of harassment to which he had previously referenced.[14]

---

[12] The plaintiff has submitted an audio recording of the 9-1-1 call as an exhibit in opposition to summary judgment. Pl. Ex. G, Doc. 55. A transcript of the conversation is also transcribed as part of the deposition of Brian Small, where the recording was played and taken down by the stenographer. Small Dep. 49–55, Doc. 52-4.

[13] The recipient of this September 17, 2020, email is unclear from the record. The defendant's statement of material facts describes it in cursory fashion, and the plaintiff has admitted the factual statement. A copy of the email does not appear to have been submitted into the record, but the nature of this brief email is undisputed.

[14] A copy of this September 23, 2020, email has been submitted by the plaintiff as an exhibit in opposition to summary judgment. It was

*(continued on next page)*

These incidents included: (1) on June 9, 2018, "ride me hard" was written in the dirt on the tailgate of Haines's personal truck while parked at the Center Moreland stockpile;[15] (2) on November 28, 2018, using his state-issued work cellphone, Gorko called Haines's personal cellphone and left a voicemail message that stated only "pee pee toucher";[16] (3) on February 3, 2019, Joe Blat, a coworker of Haines also supervised by Gorko, created and circulated a meme implying that Haines was unqualified and unfit to be interviewed for an open foreman position;[17] (4) on February 4, 2019, a menstrual pad was left on a seat where Haines typically sat, and Haines reported that Gorko had admitted to being responsible for it;[18]

---

addressed to Davis, with copies sent to Kmiec, Small, Roberts, and other PennDOT recipients. Pl. Ex. H, Doc. 52-4.

[15] The plaintiff submitted a photograph of this message written on the tailgate of his truck as an attachment to this email and as an exhibit in opposition to summary judgment. Pl. Ex. K, Doc. 52-4, at 100.

[16] The plaintiff submitted an audio recording of this voicemail message as an attachment to this email and as an exhibit in opposition to summary judgment. Pl. Ex. I, Doc. 55. A transcript of this very brief voicemail is also transcribed as part of the deposition of Brian Small, where the recording was played and taken down by the stenographer. Small Dep. 70, Doc. 52-4.

[17] The plaintiff submitted a photograph of this meme as an attachment to this email and as an exhibit in opposition to summary judgment. Pl. Ex. J, Doc. 52-4, at 98.

[18] The plaintiff submitted photographs of the menstrual pad on the seat as attachments to this email and as an exhibit in opposition to summary judgment. Pl. Ex. L, Doc. 52-4, at 102–03.

(5) on July 30, 2020, Gorko berated Haines in front of his work crew for dropping radios; (6) on August 20, 2020, Gorko reported to the assistant county manager, Roberts, that Haines was working an unauthorized second job besides PennDOT, and Gorko later told Haines that Roberts told Gorko to watch Haines's house for evidence that Haines was doing so; and (7) the events of September 17, 2020, in which Haines received a PDC notice, left work early, and police were sent to his house by PennDOT staff for a welfare check and to investigate a potential domestic dispute.

The parties dispute whether Haines had previously reported these incidents to his superiors at PennDOT. Prior to Haines's September 17 and 23, 2020, email messages, he had never reported any of the alleged harassment set forth in the preceding paragraph to HR or to his indirect supervisors, except for the February 3, 2019, incidents that he reported to Roberts, and he had never before identified Blat or Gorko as the source of the meme and menstrual pad, respectively.[19] Both Haines's sexual

---

[19] In support of this factual statement, the defendant cites the Haines email itself. We further note that Small testified at his deposition that, prior to Haines's September 2020 email messages, he was not aware of Haines's sexual orientation or the alleged harassment. Small Dep. 65–

*(continued on next page)*

orientation and the alleged discriminatory, retaliatory, or harassing

---

66, Doc. 52-4. Roberts similarly testified at his own deposition that was even then unaware of Haines's sexual orientation, and, other than the February 3, 2019, meme and menstrual pad incidents, the alleged harassment was never brought to his attention either. Roberts Dep. 20–21, 27, 119, 120–21, 123–24, Doc. 52-4. *See generally* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). The plaintiff has responded to this factual statement: "Denied as stated. Strict proof demanded." Pl. Resp. to Statement of Facts ¶ 30, Doc. 54. The plaintiff, however, has failed to cite to any evidence in support of this bare denial. Under Rule 56 of the Federal Rules of Civil Procedure,

> [a] party asserting that a fact . . . is genuinely disputed must support that assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited [by the movant] do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Our local civil rules similarly provide that "[s]tatements of material facts . . . in opposition to[] a motion [for summary judgment] shall include references to the parts of the record that support the statements." M.D. Pa. L.R. 56.1. Thus, in the absence of citation to *any* evidence to dispute the defendant's supported factual statement on this point, the defendant's factual statement has been deemed admitted. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

conduct was contemporaneously known to Haines's direct supervisor, Gorko, who is alleged to be Haines's primary harasser.

Following Haines's September 2020 email messages, PennDOT immediately investigated his allegations of sexual harassment by gathering documentation and interviewing witnesses, including Gorko, Roberts, Blat, and Haines. On October 23, 2020, PennDOT and Gorko's union entered into a pre-grievance settlement in which Gorko served the equivalent of a one-day suspension following PennDOT's finding that Gorko's voicemail message to Haines violated policy.

On November 3, 2020, Haines dual-filed a charge of discrimination, #530-2021-00519, with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). Pl. Ex. A, Doc. 52-4.

In the meantime, Haines had requested and was granted FMLA leave through December 3, 2020. He was simultaneously approved for extended leave without pay ("LWOP") through September 1, 2021. Haines exhausted his FMLA leave and began LWOP, but Haines never responded to PennDOT's status requests even after LWOP expired on September 1, 2021. By letter dated November 4, 2021, PennDOT notified

Haines that his employment was terminated effective close of business on November 5, 2021, for failure to respond to previous PennDOT requests for a return-to-work date.[20] Haines, however, contends that he had already been constructively discharged due to a hostile work environment.

In addition to the foregoing timeline of events, the defendant contends that Haines is unable to adduce evidence that PennDOT was aware of Haines's sexual orientation. Although Small and Roberts testified at their respective depositions that they were unaware of Haines's sexual orientation at the time of the foregoing events,[21] in response to this contention by PennDOT, Haines has cited his own deposition testimony, in which he reported having informed Gorko and his coworkers of his sexual orientation in early 2018.[22] In addition, Haines has pointed to deposition testimony in which he stated that Gorko

---

[20] The defendant's factual statement describes the letter as being dated November 5, 2021, but a copy of the letter itself has been submitted as an exhibit, and it is clearly dated November 4, 2021. *See* Def. Ex. 19, Doc. 50-19.

[21] *See, e.g.*, Small Dep. 16, 65–66, 72–73, Doc. 52-4; Roberts Dep. 20–21, 27, Doc. 52-4.

[22] *See, e.g.*, Haines Dep. 39–41, Doc. 52-4.

had routinely called him "gay" and a "fag."[23]

### 2. Exhaustion of Administrative Remedies

Title VII claims premised on discrete acts of discrimination or retaliation, which are individually actionable, "must be raised within the applicable limitations period or they will not support a lawsuit." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "Before bringing a lawsuit under Title VII, . . . a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 431 (E.D. Pa. 2023).

Here, the plaintiff filed a charge of discrimination with the EEOC on Tuesday, November 3, 2020. Therefore, only discrete acts that occurred within 300 days before that date are actionable. *See Morgan*, 536 U.S. at 114 (holding that only discrete acts that took place within the 300-day timely filing period are actionable). All prior discrete discriminatory or retaliatory acts—i.e., those that occurred before Wednesday, January 8,

---

[23] The remainder of the defendant's statement of material facts consists of legal conclusions rather than factual statements, offered without any supporting citations to record materials.

2020—are untimely filed and no longer actionable.[24] *Id.* at 115.

Thus, Haines's discrimination and retaliation claims must be dismissed for failure to timely exhaust administrative remedies with respect to the following four discrete acts: (1) a June 2018 incident in which "ride me hard" was written on the tailgate of his personal truck; (2) a November 2018 incident in which Gorko left a voicemail on Haines's personal cellphone that stated only "pee pee toucher"; (3) a February 2019 incident in which a coworker circulated a meme about Haines being unqualified for an open foreman position; and (4) a February 2019 incident in which Gorko allegedly left a menstrual pad on a seat where

---

[24] The plaintiff suggests that the limitation period for these prior discrete acts may be tolled under the continuing violations doctrine, an equitable doctrine which provides that when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act in the continuing practice falls within the limitations period. But the continuing violations doctrine is not applicable to Title VII claims based on discrete discriminatory or retaliatory acts. *See Morgan*, 536 U.S. at 114; *O'Connor*, 440 F.3d at 127; *see also Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 825 (W.D. Pa. 2016) ("The Third Circuit has interpreted the holding in *Morgan* as 'a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim.' Discrete acts 'must be raised within the applicable limitations period or they will not support a lawsuit,' while a hostile work environment claim 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'") (citations omitted).

Haines typically sat.

Haines's discrimination and retaliation claims regarding the following three discrete acts, however, were timely filed: (1) a July 2020 incident in which Gorko berated Haines in front of his coworkers for dropping radios; (2) an August 2020 incident in which Gorko reported to Roberts that Haines was working an unauthorized second job, and Roberts allegedly told Gorko to watch Haines's house for evidence that Haines was doing so; and (3) the events of September 17, 2020, in which Haines received a PDC notice, left work early, and police were sent to his house by PennDOT staff.

The plaintiff's hostile work environment claims, moreover, were timely commenced because at least one act contributing toward the hostile work environment claim occurred within the filing period. *See Morgan*, 536 U.S. at 116–17.

Accordingly, we find that, based on the record before us, viewed in the light most favorable to the non-moving plaintiff, there exists no genuine dispute of material fact, and the defendant, PennDOT, is entitled to judgment as a matter of law in its favor with respect to the plaintiff's Title VII claims of discrimination and retaliation arising out of discrete

acts that occurred prior to January 8, 2020.

### 3. Discrete Act Retaliation Claims

To establish a prima face case of retaliation under Title VII, a plaintiff must establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340–41.

It is undisputed that Haines's September 17, 2020, and September 23, 2020, email messages to PennDOT HR staff complaining about incidents of harassment he had experienced constituted protected activity under Title VII, as did his November 3, 2020, EEOC charge. But aside from his ultimate termination in November 2021, all of the allegedly retaliatory actions identified by the plaintiff *preceded* these protected activities, including those that occurred earlier on the same day when Haines sent his first email to HR. Thus, while these prior incidents might contribute to Haines's hostile work environment claim, there is simply no causal connection where an allegedly retaliatory action *precedes* the protected activity upon which a Title VII retaliation claim

is based. *See Waiters v. Aviles*, 418 Fed. App'x 68, 72 (3d Cir. 2011) (per curiam); *Robinson*, 120 F.3d at 1301; *Malakoski v. Garland*, No. 3:22-CV-00977, 2025 WL 565832, at *10 (M.D. Pa. Feb. 20, 2025), *appeal filed*, No. 25-1521 (3d Cir. Mar. 20, 2025); *Scott v. Genesis Healthcare, Inc.*, No. 15-0916, 2016 WL 4430650, at *21 (E.D. Pa. Aug. 22, 2016); *Bazargani v. Haverford State Hosp.*, 90 F. Supp. 2d 643, 653 n.20 (E.D. Pa. 2000).

The plaintiff points to his February 2019 complaint to Roberts about the meme and menstrual pad incidents and his August 2019 conversations with Roberts in which he complained about Gorko calling him "a little bitch" and telling him he was "acting like a girl" about being injured. But the earliest allegedly retaliatory actions identified by the plaintiff did not occur until July 2020,[25] well more than a year after Haines complained about the meme and menstrual pad incidents and nearly a year after he complained about Gorko calling him "a little bitch" and saying he was "acting like a girl." In the absence of any other evidence of an intervening pattern of antagonism, the temporal proximity between these events is insufficient to support an inference of retaliatory

---

[25] The plaintiff alleges that, in July 2020, Gorko assigned him to work as a flagger and yelled at him for dropping radios.

animus. *See Shinn v. FedEx Freight, Inc.*, 783 Fed. App'x 229, 233–34 (3d Cir. 2019) (termination two months after participation in investigation was insufficient to suggest a causal relationship on its own); *Deans v. Kennedy House, Inc.*, 587 Fed. App'x 731, 735 (3d Cir. 2014) (per curiam) (holding that, in the absence of any other evidence suggesting a causal link, the temporal proximity between a plaintiff's termination and his filing of an EEOC charge more than two months earlier was "not so close as to be unduly suggestive" of a causal connection); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759–60 (3d Cir. 2004) (explaining that a two-month gap is insufficient to support an inference of causal connection between protected activity and termination).

As for his ultimate termination, a similarly extended gap of more than a year exists between the undisputed protected activity—Haines's September 2020 email complaints to HR and his November 2020 EEOC charge—and his termination in November 2021. Thus, in the absence of any other evidence of an intervening pattern of antagonism, the temporal proximity between these events is similarly insufficient to support an inference of retaliatory animus. *See Shinn*, 783 Fed. App'x at 233–34; *Deans*, 587 Fed. App'x at 735; *Williams*, 380 F.3d at 759–60.

On this point, the plaintiff argues that he was constructively discharged when he left work on September 17, 2020, went on authorized FMLA leave and LWOP status, and never returned to work. Based on this, the plaintiff argues that the temporal proximity of these protected activities and his constructive discharge is unduly suggestive of a causal relationship. But while his alleged constructive discharge did occur close in time to his initial email complaint to HR, as with the other putative retaliatory actions addressed above, the plaintiff's alleged constructive discharge commenced before noon on September 17, 2020, and was based on intolerable employment conditions that occurred over a period of months or years and preceded his departure, with the relevant protected activities occurring only *after* his constructive discharge. Thus, as we have already noted above, there is simply no causal connection where the allegedly retaliatory action *precedes* the protected activity upon which a Title VII retaliation claim is based. *See Waiters*, 418 Fed. App'x at 72; *Robinson*, 120 F.3d at 1301; *Malakoski*, 2025 WL 565832, at *10; *Scott*, 2016 WL 4430650, at *21; *Bazargani*, 90 F. Supp. 2d at 653 n.20.

Accordingly, we find that, based on the record before us, viewed in the light most favorable to the non-moving plaintiff, there exists no

genuine dispute of material fact, and the defendant, PennDOT, is entitled to judgment as a matter of law in its favor with respect to the remainder of the plaintiff's Title VII retaliation claims.

### 4. *Discrete Act Discrimination Claims*

To establish a prima face case of discrimination under Title VII, a plaintiff must establish that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also Rorke v. Aubrey Alexander Toyota*, 399 F. Supp. 3d 258, 276 (M.D. Pa. 2019). "The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Const. Co. v. Waters*, 438 U.S. 567, 577 (1978); *see also Rorke*, 399 F. Supp. 3d at 276 (quoting *Waters*, 438 U.S. at 577). Therefore, a plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected under Title VII."

*Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999); *see also Rorke*, 399 F. Supp. 3d at 276 (quoting *Iadimarco*, 190 F.3d at 161).

In addition to his ultimate termination, Haines has identified three timely filed discrete acts of discrimination: (1) a July 2020 incident in which Gorko berated Haines in front of his coworkers for dropping radios; (2) an August 2020 incident in which Gorko reported to Roberts that Haines was working an unauthorized second job, and Roberts allegedly told Gorko to watch Haines's house for evidence that Haines was doing so; and (3) the events of September 17, 2020, in which Haines received a PDC notice, left work early, and police were sent to his house by PennDOT staff.

The July 2020 incident in which Gorko berated Haines in front of his coworkers does not constitute an adverse employment action. "An adverse employment action may be a discharge or a failure to hire, or any action that alters an employee's compensation, terms, conditions, or privileges of employment." *Collins v. Sload*, 212 Fed. App'x 136, 140 (3d Cir. 2007) (per curiam). Allegations of "unsubstantiated oral reprimands" or "unnecessary derogatory comments" do not rise to the level of the adverse employment action required for a discrimination claim. *See*

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997), *overruled on other grounds*, *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Rice v. KBR*, No. 1:21-CV-1528, 2023 WL 2616096, at *3 (M.D. Pa. Mar. 23, 2023) (finding verbal reprimands did not rise to the level of an adverse employment action); *Whitehead v. Cnty. of Monmouth*, No. 15-5352, 2015 WL 7776896, at *2 (D.N.J. Dec. 2, 2015) (finding mere humiliation suffered in meeting with supervisor and coworkers did not amount to an adverse employment action); *Wilson v. City of Wilmington*, No. 13-1390, 2015 WL 4571554, at *6 (D. Del. July 29, 2015) (finding circulation of email complaint about the plaintiff to his subordinates, causing embarrassment and humiliation, did not constitute adverse employment action); *Blake v. Penn State Univ. Greater Allegheny Campus*, No. 09-1182, 2011 WL 841374, at *9 (W.D. Pa. Mar. 8, 2011) (finding no adverse employment action where plaintiff was berated before coworkers on minor or insignificant grounds and burdened with harsh work assignments); *Hodge v. Super. Ct. of V.I.*, No. 07-87, 2009 WL 2996507, at *7 (D.V.I. Sept. 11, 2009) (finding a plaintiff's "feelings of humiliation do not establish a tangible adverse employment action).

The August 2020 incident in which Gorko investigated or threatened an investigation of Haines for working an unauthorized second job likewise does not constitute an adverse employment action. There is no evidence in the record before us to suggest that this investigation resulted in any actual disciplinary action or any material change to Haines's compensation, terms, conditions, or privileges of employment. *See Collins*, 212 Fed. App'x at 140. Without such a material change to the terms or conditions of his employment, mere investigation, or the threat of investigation, does not constitute an adverse employment action. *See Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 324 n.4 (E.D. Pa. 2017) ("An investigation does not qualify as an adverse employment action when it does not result in discipline or reduced responsibilities."); *Rosati v. Colello*, 94 F. Supp. 3d 704, 714 (E.D. Pa. 2015) ("Investigations, separate from any negative consequences that may result from them, do not generally constitute adverse employment actions."); *see also Holt v. Pennsylvania*, 683 Fed. App'x 151, 159–60 (3d Cir. 2017); *Barnes v. Nationwide Mut. Ins. Co.*, 598 Fed. App'x 86, 90–91 (3d Cir. 2015); *Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 504–05 (M.D. Pa. 2014), *aff'd*, 612 Fed. App'x 124 (3d Cir. 2015).

The investigation and resulting PDC notice to Haines in September 2020 likewise do not constitute adverse employment actions. Haines was never suspended or otherwise disciplined as a result of this investigation and pre-disciplinary conference notice; instead, he immediately went on FMLA leave and then LWOP status. *See Holt*, 683 Fed. App'x at 159–60; *Barnes*, 598 Fed. App'x at 90–91; *Howell*, 283 F. Supp. 3d at 324 n.4; *Rosati*, 94 F. Supp. 3d at 714; *Burton*, 990 F. Supp. 2d at 504–05. Moreover, Haines has failed to demonstrate that he was treated less favorably than similarly situated employees not in his protected class, to wit: Porasky and Ritz, both whom were investigated and received PDC notices as well. *See Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

The call to police, however, is a different matter. While a truthful call to police about a threatening or dangerous employee might not be an adverse employment action, there is case law to support the proposition that a *false* report to police may constitute one. *See Aviles v. Cornell Forge Co.*, 241 F.3d 589, 593 (7th Cir. 2001) (affirming directed verdict for defense following trial); *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 606 (7th Cir. 1999) (reversing summary judgment decision). Based on the evidence

before us, viewed in the light most favorable to the non-moving plaintiff, particularly the fact that the concerns regarding a potential danger posed by Haines originated with an email from Gorko, his immediate supervisor, we find there exists a genuine dispute of material fact with respect to whether this call to police on September 17, 2020, constitutes an adverse employment action.

It is beyond cavil that Haines's ultimate termination was an adverse employment action. Although this termination did not formally occur for more than year on FMLA leave and LWOP status, and came only after he failed to respond to his employer's inquiries about a return-to-work date, Haines contends that he was constructively discharged when he left work on September 17, 2020, never to return, as a result of the events of that day.[26] Based on the evidence before us, viewed in the light most favorable to the non-moving plaintiff, we find there exists a genuine dispute of material fact with respect to whether Haines was constructively discharged, whether as a result of the allegedly traumatic encounter with police at his home on September 17, 2020, or as a result

---

[26] In the alternative, his hostile work environment claim separately alleges that he was constructively discharged as a result of a longer running pattern of harassment on the basis of his sexual orientation.

of the hostile work environment alleged in a separate count of the second amended complaint.

With respect to the fourth element of a discrete act discrimination claim—whether the action occurred under circumstances that could give rise to an inference of intentional discrimination—we note that there is no evidence of discriminatory animus with respect to Small, Roberts, or other senior PennDOT management personnel. But, based on the evidence before us, viewed in the light most favorable to the non-moving plaintiff, we find there exists a genuine dispute of material fact with respect to whether discriminatory animus by Gorko, Haines's direct supervisor and the apparent origin for reports of Haines's mental instability and potential dangerousness, may be imputed to their common employer, PennDOT. *See Bogaski v. Cnty. of Allegheny*, 244 F. Supp. 3d 476, 483–84 (W.D. Pa. 2017) (genuine dispute of material fact existed with respect to foreman with authority to assign work to plaintiff, not merely oversee its performance as a co-worker); *see also Anderson v. Deluxe Homes of PA, Inc.*, 131 F. Supp. 2d 637, 651 (M.D. Pa. 2001) ("A supervisor's knowledge generally will be imputed to the company for purposes of liability only if the supervisor is at a sufficiently high level in

the company hierarchy.") (brackets omitted). *See generally Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 107 (3d Cir. 2009).

Accordingly, we find that, based on the record before us, viewed in the light most favorable to the non-moving plaintiff, there exists no genuine dispute of material fact, and the defendant, PennDOT, is entitled to judgment as a matter of law with respect to the plaintiff's Title VII claims of discrimination arising out of the following discrete acts: (1) a July 30, 2020, incident in which Gorko berated Haines in front of his coworkers for dropping radios; (2) an August 20, 2020, incident in which Gorko reported to Roberts that Haines was working an unauthorized second job, and Roberts allegedly told Gorko to watch Haines's house for evidence that Haines was doing so; and (3) an investigation regarding a September 14, 2020, incident involving damage to a PennDOT truck driven by Haines and a PDC notice dated September 16, 2020, and delivered to Haines on September 17, 2020.

We further find that, based on the record before us, viewed in the light most favorable to the non-moving plaintiff, a genuine dispute of material fact does exist with respect to the plaintiff's Title VII claims of discrimination arising out of the following discrete acts: (1) a September

17, 2020, incident in which PennDOT staff called 9-1-1 to request that local police to conduct a welfare check on Haines at his home, informing the 9-1-1 dispatcher that Haines had made threats of violence concerning his family, and that he might possibly be violent if police showed up, and two local police officers were dispatched to encounter Haines at his residence as a consequence; and (2) the alleged constructive discharge of Haines on or after September 17, 2020. Having found that the plaintiff has established a prima facie case of discrimination arising out of these discrete acts, the defendant's motion for summary judgment will be denied with respect to these particular claims.

### 5. Hostile Work Environment Claim

The plaintiff claims that he was subjected to ongoing harassment and a hostile work environment over a course of years, culminating in his constructive discharge. The plaintiff's hostile work environment claim is not evaluated under the *McDonnell Douglas* framework. *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017); *Hanafy*, 669 F. Supp. 3d at 439–40.

To succeed on a hostile work environment claim under Title VII, a plaintiff must establish that:

> (1) he suffered intentional harassment based on his [sexual orientation]; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected him; (4) the harassment would have detrimentally affected a reasonable person in similar circumstances; and (5) a basis for employer liability. The last factor requires that the plaintiff point to facts showing that the employer was aware of the discrimination and yet failed to take prompt and appropriate corrective action.

*Cooper v. Pa. Hum. Rel. Comm'n*, 578 F. Supp. 3d 649, 665–66 (M.D. Pa. 2022) (citations omitted); *see also Hanafy*, 669 F. Supp. 3d at 441.

In its brief, PennDOT addresses this claim in perfunctory fashion only. It argues that most of the acts identified by the plaintiff occurred more than 300 days before Haines filed his EEOC charge, and therefore need not be considered. PennDOT argues that the remaining three acts—the July 2020 radio incident, the August 2020 "investigation" regarding outside employment, and the September 2020 investigation regarding damage to a PennDOT truck and a call to police reporting Haines as a potential danger to his family and to responding officers—offer no indicia of sex discrimination and do not constitute severe or pervasive harassment.

But, as explained in the foregoing section of this opinion addressing the exhaustion of administrative remedies, "[a] hostile work environment

claim is composed of a series of separate acts that collectively constitute one unlawful employment practice . . . ." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (internal quotation marks omitted).

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

*Morgan*, 536 U.S. at 115 (citations omitted). "[A]cts which are not individually actionable but may be aggregated to make out a hostile work environment claim . . . can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor*, 440 F.3d at 127; *see also Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 825 (W.D. Pa. 2016).

"The existence of a hostile work environment is determined by looking at the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

*Jenkins v. Ciocca Mgmt., Inc.*, ___ F. Supp. 3d ____, 2025 WL 62803, at *3 (E.D. Pa. Jan. 9, 2025); *see also Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 355 (M.D. Pa. 2012) ("[A] court's hostile work environment analysis must concentrate not on individual incidents, but on the overall scenario because it is often difficult to determine the motivation behind allegedly discriminatory actions. The workplace conduct is not measured in isolation. Rather, whether an environment is sufficiently hostile or abusive must be determined by looking at all the circumstances.") (citations and internal quotation marks omitted).

Based on the evidence before us, viewed in the light most favorable to the plaintiff, we find there is a genuine dispute of material fact with respect to each of the five elements of a hostile work environment claim articulated above. Based on the material facts set forth above, which describe an extensive pattern of harassment, much of it explicitly related to Haines's sexual orientation, beginning in June 2018 and continuing until an encounter with police sent to his home by his supervisors on September 17, 2020, a reasonable jury could conclude that Haines suffered intentional harassment due to his sexual orientation, the harassment was severe or pervasive, the harassment detrimentally

affected Haines, and the harassment would have detrimentally affected a reasonable person in similar circumstances.

With respect to the fifth element, a basis for employer liability, the Supreme Court has explained:

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided.

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

Here, although some of the harassment appears to have been by co-workers on the same crew as Haines, it was Gorko, Haines's immediate supervisor and the foreman of that crew, who was the primary harasser. Neither party has expressly addressed the issue of whether Gorko's alleged harassment of Haines culminated in a tangible employment action, but the plaintiff has argued in his hostile work environment claim

that the pattern of harassment ultimately culminated in his constructive discharge on September 17, 2020, when he left work early, went on FMLA leave and LWOP status, and never returned to work at PennDOT. A plaintiff may show he was constructively discharged by establishing "working conditions bec[a]me so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). A constructive discharge constitutes a tangible employment action "when a supervisor's official act precipitates the constructive discharge." *Id.* at 140–41. Based on the record before us, viewed in the light most favorable to the non-moving plaintiff, we find there exists a genuine dispute of material fact with respect to whether Haines was constructively discharged and the constructive discharge was precipitated by an official act by his supervisor Gorko, in which case PennDOT may be held strictly liable, or whether PennDOT exercised reasonable care to prevent and correct any harassing behavior and Haines unreasonably failed to take advantage of any preventative or corrective opportunities that PennDOT had provided.

Accordingly, we find that, based on the record before us, viewed in

the light most favorable to the non-moving plaintiff, there is a genuine dispute of material fact with respect to the plaintiff's Title VII hostile work environment claim. Therefore, the defendant's motion for summary judgment will be denied with respect to this particular claim.

## III.  CONCLUSION

For the foregoing reasons, the individual defendants—Brian Small and Ronald Gorko, each named as a defendant in his personal capacity—will be dismissed sua sponte for failure to state a claim upon which relief can be granted. Gorko's motion for joinder and his motion for summary judgment will be denied as moot. PennDOT's motion for summary judgment will be granted in part and denied in part. The clerk will be directed to enter judgment in favor of defendant PennDOT and against the plaintiff with respect to: (1) all of the plaintiff's Title VII retaliation claims; (2) all of the plaintiff's Title VII discrimination claims arising out of discrete acts except for those arising out of the September 17, 2020, call to police and arising out of his constructive discharge. PennDOT's motion for summary judgment will be denied with respect to the plaintiff's Title VII hostile work environment claim and his Title VII discrete act discrimination claims arising out of the September 17, 2020,

call to police and arising out of his constructive discharge. PennDOT's motion for summary judgment will be denied as moot to the extent it seeks summary judgment on behalf of defendant Small.

This matter shall be set down for a jury trial with respect to the plaintiff's surviving claims against PennDOT.

An appropriate order follows.

Dated: March 28, 2025                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge